# Illinois Official Reports

## Appellate Court

---

### *People v. Miller*, 2014 IL App (1st) 122186

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. DALE MILLER, Respondent-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-2186 |
| Filed | April 25, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court affirmed the trial court's order committing respondent to a secure facility as a sexually violent person, since section 35(c) of the Sexually Violent Persons Commitment Act does not allow a respondent who has not made a timely jury demand to make a demand after the State withdraws its timely jury demand and no good cause existed that would warrant granting respondent's late jury demand; furthermore, the record showed that the trial court considered the factors relevant to committing respondent to a secure facility at a hearing immediately after the trial, and in the absence of any indication that defendant had other witnesses or evidence he wanted to present and was prevented from doing so, the trial court's failure to hold an additional hearing did not warrant vacating the commitment order. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-80001; the Hon. Paul Biebel, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Daniel T. Coyne, Matthew M. Daniels, and Michael R. Johnson, all of Law Offices of Chicago-Kent College of Law, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Michael M. Glick and Gopi Kashyap, Assistant Attorneys General, of counsel), for the People.

Panel

JUSTICE TAYLOR delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent Dale Miller appeals orders from the circuit court of Cook County finding him to be a sexually violent person and committing him to a secure facility for treatment. He contends that he was denied his right to a jury trial after the State withdrew its jury demand, as well as his right to dispositional hearing on the issue of whether he should be committed to secure care.

¶ 2                                    BACKGROUND

¶ 3    On February 2, 2007, the State filed a petition to commit the respondent under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2006)), alleging that respondent had been convicted of sexually violent offenses and suffered from the mental disorder of paraphilia, not otherwise specified (NOS) nonconsenting persons, such that it was substantially probable that he would engage in future acts of sexual violence. The State attached to its petition a certified copy of respondent's conviction from 1992 of aggravated criminal sexual assault and robbery, as well as the report of Dr. Ray Quackenbush, a medical doctor who diagnosed respondent with paraphilia, alcohol abuse in a controlled environment and antisocial personality disorder. The copy of respondent's 1992 conviction indicated that the circuit court ordered behavior clinical examinations of respondent while the case was pending.

¶ 4    The next day, the court found, based on the petition, that it had cause to believe that respondent was a sexually violent person and ordered him detained at the Department of Human Services (DHS). On February 28, 2007, the court held a probable cause hearing, at which time respondent's counsel informed the court that respondent had told him that he would rather represent himself. After the court suggested that respondent "work things out" with his counsel, respondent stated that he would rather represent himself, which the court

allowed. After hearing testimony from Dr. Quackenbush that respondent had admitted during an interview that he would lose control of his behavior when someone said "no" to him, and that respondent received 135 disciplinary tickets while incarcerated, the court found probable cause to believe that respondent was a sexually violent person. The State filed a timely jury demand within 10 days of the probable cause hearing, while respondent, who chose to remain *pro se* after the circuit court's repeated reminders of his right to counsel, did not file a jury demand of his own within the statutory period.

¶ 5    On April 17, 2007, the trial court again advised respondent of his right to counsel, which he refused. Respondent then filed two motions to dismiss the petition, the first of which alleged that the failure to hold a probable cause hearing within 72 hours of the filing of the petition was a violation of section 30(b) of the Act (725 ILCS 207/30(b) (West 2006)) and of his constitutional rights. His second motion to dismiss was based on the State's failure to verify the petition. Both motions were denied. After being admonished on his right to counsel on two additional court dates, respondent continued to insist on proceeding *pro se*, and filed a new motion to dismiss claiming that paraphilia NOS-nonconsent was not a valid diagnosis, which was also denied.

¶ 6    On December 10, 2008, after several other occasions in which the court advised respondent to reconsider his right to counsel, respondent agreed to have an attorney appointed to him. Counsel for both parties appeared before the court on March 21, 2011, to schedule a trial date, at which time the State indicated that it was unsure as to whether it would continue to demand a jury trial, and respondent's counsel asked the court to entertain a tardy jury demand. In doing so, respondent's counsel argued that defendant appeared *pro se* throughout the early parts of the proceeding and was unaware of the deadline for filing a jury demand. Respondent's counsel proposed a trial date of June or July 2011, so that he could attempt to communicate with respondent, who had refused transportation to the hearing. The court deferred ruling on respondent's late jury request, and on September 1, 2011, the State withdrew its jury demand and respondent's counsel again requested a jury trial. Finding that respondent had waived his right to a jury trial, the court denied the request.

¶ 7    The court issued orders on two separate dates informing respondent that trial would go forward in his absence if he continued to refuse appearing in person. On March 23, 2012, the date set for trial, respondent again refused transportation to court, and the trial court decided to try respondent *in absentia*, over his counsel's objection.

¶ 8    At trial, the State called two clinical psychologists, Dr. Jessica Ransom and Dr. Robert Brucker. Since respondent did not consent to an interview with either doctor, both witnesses based their opinions on respondent's files from the DHS and the Illinois Department of Corrections, which included his criminal and disciplinary history, health records and prior evaluations. His criminal history included two convictions for sexual offenses, namely: (1) the previously mentioned 1992 conviction of attempted aggravated sexual assault, in which he robbed and attempted to assault a security guard at a restroom stall at knifepoint; and (2) a 1972 conviction of rape, where he entered a woman's house and forced her to have sex with him by holding a sharp object to her neck. The doctors also considered the fact that respondent received more than 130 disciplinary tickets while incarcerated, as well as respondent's report to Dr. Quackenbush that the anger and rage respondent feels when a woman refuses intercourse with him causes him to lose his ability to control his urges and behavior. Both experts opined a diagnosis that respondent suffered from paraphilia NOS,

sexually attracted to nonconsenting females, nonexclusive type; and that respondent also suffered from antisocial personality disorder (APD), which, combined with paraphilia, contributes to his inability to control his behavior. The experts opined that respondent's mental disorders affect his emotional capacity and predispose him to sexual violence. In finding that respondent was substantially likely to re-offend, the experts also took into account the fact that respondent had not participated in any sex offender treatment programs, committed his second sexual offense while under community supervision, admitted to having an "attitude problem," and had a history of lack of discipline.

¶ 9       Respondent's counsel did not introduce any evidence in its case-in-chief, and after closing arguments, the trial court found respondent a sexually violent person. At that time, the State asked that respondent be committed to secure care in light of the evidence regarding his lack of treatment. Respondent's counsel objected and asked that the matter be set for a dispositional hearing because the last report that had been done on respondent's mental health was almost two years old. The court, relying on *In re Detention of Tittlebach*, 324 Ill. App. 3d 6 (2001), and *In re Detention of Varner*, 315 Ill. App. 3d 626 (2000), found that it did not need to hold a dispositional hearing before committing respondent if the court believed that it weighed the appropriate factors heard at trial. The court then found that, based on respondent's diagnoses, the circumstances surrounding his past behavior, and his failure to seek treatment, "the only appropriate finding" at that time was to commit respondent to a secure facility.

¶ 10      Respondent filed a posttrial motion, challenging, in pertinent part, the court's denial of his late jury demand and its denial of his request to continue the proceedings after trial to conduct an evaluation before a dispositional hearing.

¶ 11                                    ANALYSIS

¶ 12      On appeal from that order, respondent first contends that the trial court erred in denying his late jury demand because once the State withdrew its own demand for a jury trial, respondent was entitled to make such a demand as a matter of right under section 2-1105(a) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1105(a) (West 2006)). While respondent acknowledges that the Act requires both parties to file a jury demand within 10 days of the probable cause hearing, he maintains that the Code, which applies to proceedings under the Act, allows the party that did not initiate the proceeding to file a late jury demand when the opposing party withdraws its demand for a jury trial. Whether respondent had a right to file a late jury demand under the applicable statutes presents an issue of statutory interpretation, which this court reviews *de novo. In re Detention of Hardin*, 238 Ill. 2d 33, 40 (2010).

¶ 13      Section 35(c) of the Act provides, in pertinent part:
          "The person who is the subject of the petition [for commitment], the person's attorney, the Attorney General or the State's Attorney may request that a trial under this [s]ection be by a jury. A request for a jury trial under this subsection shall be made within 10 days after the probable cause hearing under [s]ection 30 of this Act. If no request is made, the trial shall be by the court. The person, the person's attorney or the Attorney General or the State's Attorney, whichever is applicable, may withdraw his or her request for a jury trial." 725 ILCS 207/35(c) (West 2010).

¶ 14 However, section 20 of the Act provides that proceedings under the Act are civil in nature, such that "[t]he provisions of the Civil Practice Law, [namely, the Code,] *** shall apply to all proceedings hereunder except as otherwise provided in this Act." 725 ILCS 207/20 (West 2006). In turn, section 2-1105(a) of the Code provides:

> "A plaintiff desirous of a trial by jury must file a demand therefor with the clerk at the time the action is commenced. A defendant desirous of a trial by jury must file a demand therefor not later than the filing of his or her answer. Otherwise, the party waives a jury. *** If the plaintiff files a jury demand and thereafter waives a jury, any defendant and, in the case of multiple defendants, if the defendant who filed a jury demand thereafter waives a jury, any other defendant shall be granted a jury trial upon demand therefor made promptly after being advised of the waiver and upon payment of the proper fees, if any, to the clerk." 735 ILCS 5/2-1105(a) (West 2006).

¶ 15 Respondent acknowledges that section 35(c) of the Act defines the time during which a party in a commitment proceeding may file a jury demand. He maintains, however, that since the Act does not specify the consequences to a party who did not make such demand, when opposite party withdraws its own demand, that issue is controlled by section 2-1105(a) of the Code. Since the Code allows the party who did not initiate the proceedings to file a late jury demand immediately after another party withdraws its demand, respondent claims that he had the right to a jury trial when he made his demand upon learning that the State intended to waive a jury.

¶ 16 The State responds that section 2-1105(a) of the Code is part of a statutory scheme that governs all aspects of jury demands in civil proceedings and differs from the rules under the Act. As such, the State maintains that the rules governing jury demands under the Code are inapplicable to commitment proceedings, which are governed exclusively by section 35(c) of the Act. The State notes that the Code applies to commitment proceedings only if it is not "otherwise provided" by the Act, and maintains that the rules governing jury demands are one such instance in which only the Act applies.

¶ 17 These claims pertain to statutory construction, a question of law which we review *de novo*. *Hardin*, 238 Ill. 2d at 40 (citing *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389 (2009)). Our goal in construing a statute is to determine and give effect to the legislature's intent, and " '[a]ll other rules of statutory construction are subordinate to this cardinal principle.' " *People v. Spurlock*, 388 Ill. App. 3d 365, 370 (2009) (quoting *In re Detention of Powell*, 217 Ill. 2d 123, 135 (2005)). The best evidence of legislative intent is the statutory language, which should be given its plain and ordinary meaning. *Id.* at 371. In doing so, this court will not depart from the statute's plain language by reading into it exceptions, limitations or conditions which are inconsistent with the statute's intent. *Hardin*, 238 Ill. 2d at 40. The words and phrases within the statutory language should not be considered in isolation, but must be interpreted in light of other relevant provisions and the statute as a whole. *Spurlock*, 388 Ill. App. 3d at 370 (citing *Williams v. Staples*, 208 Ill. 2d 480, 487 (2004)). " 'It is a canon of statutory construction that where the passage of a series of legislative acts results in confusion and consequences which the legislature may not have contemplated, courts must construe the acts in such a way as to reflect the obvious intent of the legislature and to permit practical application of the statutes.' " *Id.* (quoting *People ex rel. Community High School District No. 231 v. Hupe*, 2 Ill. 2d 434, 448 (1954)).

¶ 18	Here, section 35(c) of the Act and section 2-1105(a) of the Code govern the very same issue, namely, the time to file a jury demand. We note that the provision of the Code that allows a defendant to file a late jury demand after another party withdraws its own demand is not a distinct section but, instead, is part of the section which describes the deadlines for the filing of jury demands in civil proceedings. In contrast, section 35(c) of the Act, which governs deadlines for the filing of jury demands in a commitment proceeding under the Act, does not contain a similar exception for a late filing when another party withdraws its timely filed demand. The omission of such an exception in section 35(c) of the Act, compared to the explicit language in section 2-1105(a) of the Code, indicates that the legislature did not intend to allow respondents in commitment proceedings to file a late jury demand after the State withdraws its own.

¶ 19	Moreover, the legislative history of the Act shows that the statute was enacted after two amendments were passed and that the second amendment to the statute "[e]liminates the requirement that the jury trial may be withdrawn only if the party that did not make that request consents to the withdrawal." 90th Ill. Gen. Assem., Senate Bill 6, 1997 Sess., Summary. Thus, it appears that the statute originally allowed a party that did not make a timely jury demand to require a jury trial when the opposing party initially requested a jury and then waived it before trial. Such a provision, which was explicitly eliminated, would be equivalent to allowing either party to request a jury immediately after the other party withdraws its demand. Accordingly, we conclude that it was not the legislature's intent to allow a respondent to a commitment proceeding to make a late jury demand under these circumstances. See *Spurlock*, 388 Ill. App. 3d at 371 ("When a statute is capable of more than one reasonable interpretation, the statute will be deemed ambiguous, and the court may consider extrinsic aids to construction, such as legislative history.").

¶ 20	Respondent relies on *People v. Newton*, 407 Ill. App. 3d 517, 519 (2011), for the proposition that we must apply the provision of section 2-1105(a) allowing late jury demands to proceedings under the Act because "[i]f two acts may be construed so that both may stand, we must do so." However, as we noted above, all other rules governing statutory construction are subordinate to our goal of giving effect to the legislature's intent. Further, section 20 of the Act explicitly states that the provisions of the Code apply to commitment proceedings only where they do not conflict with the Act. 725 ILCS 207/20 (West 2010). Since the rules governing jury demands under the Act differ from those under the Code, section 2-1105(a) is inapplicable.

¶ 21	Respondent next contends that even if he was not entitled to a jury trial as a matter of right, the trial court abused its discretion in denying his tardy jury demand because good cause existed for making the request and the State would have suffered no prejudice. He maintains that denying his late request for a jury created an element of unfairness because respondent proceeded *pro se* during the period when he could have filed a timely jury demand and the trial court did not take sufficient steps to ensure that he was mentally fit to represent himself. Respondent further argues that when the State withdrew its jury demand, four years after the probable cause hearing, respondent had already lost the benefit of a speedy trial.

¶ 22	Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011) gives the trial court discretion to decide whether to grant a late request for a jury trial. *In re Estate of Burren*, 2013 IL App (1st) 120996, ¶ 29. However, good cause must be established by a party in order to obtain an

extension of time to file a late jury demand. *Hernandez v. Power Construction Co.*, 73 Ill. 2d 90, 95 (1978). In addition to the requirement of good cause, courts will also consider any inconvenience or prejudice to the opposing party. *Id*. However, the absence of such prejudice does not, in itself, establish good cause. *Id*. at 96. The decision is made within the sound discretion of the trial court and as such, will not be disturbed absent showing an abuse of that discretion. *Id*. at 95.

¶ 23    While respondent notes that he was the subject of an involuntary commitment proceeding based on the state of his mental health, "there is no presumption that in such a proceeding [for involuntary hospitalization] that a respondent is unfit or unable to comprehend the proceeding and articulate [himself]." See *In re M.A.*, 293 Ill. App. 3d 995, 1000 (1997). Respondent in this case was repeatedly admonished by the trial court about his right to have counsel appointed to him, and suggestion that he work things out with his original attorney, respondent made it clear that he preferred to represent himself before changing his mind years into the proceeding. In fact, respondent's various filings while representing himself indicate that respondent was not only fit to make conscious choices regarding his representation, but that he had a reasonable understanding of the provisions of the Act and the Code. As noted above, his *pro se* filings included a motion to dismiss the State's petition due to timeliness of the probable cause hearing, a motion to dismiss based on the State's failure to verify its petition, and a challenge to his diagnosis.

¶ 24    Moreover, although the State waived its demand for a jury four years after the probable cause hearing, the record does not appear to indicate that respondent's trial would have taken place more promptly if the State had never demanded a jury trial. In fact, at the hearing on March 21, 2011, to set a trial date, respondent's counsel requested more time, until at least June, because respondent had refused to appear at any of the prior hearings. That request indicates that any delays in holding a trial resulted from respondent's refusal to appear in court, rather than the State's initial demand for a jury trial. Accordingly, the trial court did not abuse its discretion in finding that neither respondent's choice to appear *pro se* in the early parts of the proceedings nor the State's initial demand for a jury constituted good cause so as to grant respondent's late request for a jury trial.

¶ 25    Respondent's reliance on *Hernandez*, 73 Ill. 2d 90, and *Washington v. Chicago Transit Authority*, 179 Ill. App. 3d 113 (1989), is not persuasive. In *Hernandez*, 73 Ill. 2d at 95-96, the defendant, which had initially filed a jury demand, withdrew its demand when the prospective jury was already in the courtroom, and in *Washington*, 179 Ill. App. 3d at 115, a similar demand was withdrawn "on the eve of trial." In both cases, it was undisputed that the jury demand was the sole cause of delaying the trial for several years. See *Hernandez*, 73 Ill. 2d at 96; *Washington*, 179 Ill. App. 3d at 115. In contrast, the parties in this case did not appear ready for trial when the State withdrew its jury demand, at least partly due to respondent's own behavior. In fact, our supreme court in *Hernandez*, 73 Ill. 2d at 99, emphasized that each case was to be decided on its own facts and that "[it does] not purport to establish a *per se* rule requiring that a party's late jury demand be granted whenever his opponent withdraws his own demand immediately before trial." Furthermore, while the court in *Hernandez*, 73 Ill. 2d at 95, noted that a plaintiff's right to a jury trial can be one of constitutional dimension, courts of this state have repeatedly held that a respondent in a civil commitment proceeding under the Act has no constitutional right to a jury trial, since it is a civil statutory proceeding unknown in the common law. *In re Detention of Samuelson*, 189

Ill. 2d 548, 560-61 (2000); see also *In re Detention of Tiney-Bey*, 302 Ill. App. 3d 396, 399 (1999) (same conclusion in a petition for a civil commitment).

¶ 26    Alternatively, respondent contends that even if we do not remand this cause for a new trial, we should nevertheless reverse the trial court's commitment order and remand this cause for a dispositional hearing because respondent was denied his statutory right to have such a hearing before a commitment order was entered against him. The State responds that the trial court did, in fact, conduct such a hearing immediately after trial when it considered several factors relevant to the determination to commit respondent to a secure facility, and that, in any event, respondent waived his right to be present at that hearing by refusing to appear at trial.

¶ 27    The Act requires two distinct determinations in a commitment proceeding. The first is whether respondent is a sexually violent person, which requires finding that: (1) respondent has been convicted of a sexually violent offense; (2) respondent has been diagnosed with a mental condition; and (3) as a result of that mental condition, it is substantially probable that respondent will commit sexually violent offenses in the future. 725 ILCS 207/40(a), 15(b) (West 2010). If the court determines that respondent is a sexually violent person, it must then determine whether he should be placed in a secure facility for treatment or conditionally released. 725 ILCS 207/40(b)(2) (West 2006). With regard to the procedure for making the latter determination, the Act provides:

> "The court shall enter an initial commitment order under this Section pursuant to a hearing held as soon as practicable after the judgment is entered [finding] that the [respondent] is a sexually violent person. If the court lacks sufficient information to make the determination required by paragraph (b)(2) of this Section immediately after trial, it may adjourn the hearing and order the Department [of Human Services] to conduct a predisposition investigation or a supplementary mental examination, or both, to assist the court in framing the commitment order." 725 ILCS 207/40(b)(1) (West 2006).

¶ 28    This court recently held on several occasions that the Act requires a court to hold a dispositional hearing prior to entering a commitment order. *In re Detention of Melcher*, 2013 IL App (1st) 123085, ¶ 66; *In re Commitment of Butler*, 2013 IL App (1st) 113606, ¶ 63; *In re Commitment of Fields*, 2012 IL App (1st) 112191, ¶ 73, *appeal allowed*, No. 115542 (Ill. May 29, 2013). However, in both *Melcher*, 2013 IL App (1st) 123085, ¶ 66, and *Butler*, 2013 IL App (1st) 113606, ¶ 64, this court declined to vacate those respondents' commitment orders where the trial court refused to hold a separate dispositional hearing following trial but neither of those respondents indicated that he had additional witnesses or evidence to present at the hearing. In both instances, this court reasoned that where respondent's request for a continuance was only so that a new examination of respondent could be performed, the decision to hold a separate hearing was within the discretion of the trial court and the commitment order did not need to be vacated. See *Melcher*, 2013 IL App (1st) 123085, ¶¶ 66-67; *Butler*, 2013 IL App (1st) 113606, ¶ 64. In fact, the court in *Butler*, 2013 IL App (1st) 113606, ¶¶ 64-65, explicitly distinguished its facts from those in *Fields*, 2012 IL App (1st) 112191, on the basis that respondent in *Fields* indicated that he had a witness to present in support of his conditional release. Accordingly, this court will not vacate a commitment order on the basis of the trial court's refusal to hold a separate dispositional hearing absent a

showing of an abuse of discretion. See *Melcher*, 2013 IL App (1st) 123085, ¶ 66; *Butler*, 2013 IL App (1st) 113606, ¶ 64.

¶ 29    Similarly to *Melcher* and *Butler*, respondent in this case does not contend that he had witnesses or additional evidence to be introduced at the dispositional hearing and was prevented from doing so. Instead, respondent's counsel in this case asked for a later hearing only so that he could seek a more recent evaluation of respondent. Under these circumstances, we decline to vacate the commitment order and remand this matter for a dispositional hearing.

¶ 30    Respondent's argument that in denying him a dispositional hearing, the trial court denied him reasonable notice of that hearing, as well as his rights to be present and to cross-examine witnesses at the hearing, is unpersuasive. We first find that respondent has forfeited those arguments by failing to raise any of them at the dispositional hearing and in his posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988).

¶ 31    Forfeiture aside, respondent was not denied his statutory rights. Section 25 of the Act provides respondent with the rights to: (1) receive "reasonable notice of the time and place of [all] hearing[s]"; (2) "be present and to be represented by counsel"; and (3) "present and cross-examine witnesses." 725 ILCS 207/25(b), (c)(1), (c)(3) (West 2010). As this court previously noted, " '[a]lthough individuals subject to the Act are afforded certain procedural safeguards similar to those afforded in criminal prosecutions, proceedings under the Act are civil, not criminal.' " *In re Detention of Lenczycki*, 405 Ill. App. 3d 1041, 1048 (2010) (quoting *In re Detention of Hardin*, 391 Ill. App. 3d 211, 216 (2009)). However, even in criminal proceedings, where such safeguards are of utmost importance, we have held that "notice [to a defendant] that the trial can proceed in a defendant's absence is notice that sentencing may occur in his absence" because "[a] sentencing hearing is a part of the trial" and, therefore, "the defendant need not be admonished that sentencing can occur in his absence." *People v. Smith*, 202 Ill. App. 3d 606, 608 (1990) (citing *People v. Collins*, 109 Ill. App. 3d 1076, 1080 (1982)). Furthermore, "[a] defendant's voluntary absence from trial may be construed as an effective waiver of his constitutional right to be present and he may be tried and sentenced *in absentia*." *People v. Phillips*, 242 Ill. 2d 189, 194-95 (2011) (citing *Taylor v. United States*, 414 U.S. 17, 18-20 (1973)).

¶ 32    A dispositional hearing under the Act is analogous to a sentencing hearing since a trial court must enter a commitment order when a respondent is found to be a sexually violent person. 725 ILCS 207/35(f) (West 2010). Thus, when the trial court admonished respondent that his trial would proceed in his absence if he refused transportation, that constituted sufficient notice of a dispositional hearing as well. Further, having received such admonishment prior to trial, respondent effectively waived his right to be present at the dispositional hearing.

¶ 33    With respect to respondent's argument that he was denied the opportunity to cross-examine the State's witnesses during the dispositional hearing, we note that the State did not recall any of its trial witnesses after the trial, and the trial court entered its commitment order based on the evidence introduced at trial. The State's trial witnesses testified to respondent's past sexual offenses and admission that he loses control when a woman rejects him, as well as his diagnosis and lack of treatment, which were relevant factors that the trial court took into account in its commitment order. It is undisputed that respondent's counsel had the opportunity to cross-examine those witnesses to those matters,

which he did. If there was any additional testimony which respondent may have elicited from the State's witnesses which was not discussed during direct examination because it was unique to the question of whether he should be placed in a secured facility, any such testimony would have been outside the scope of cross-examination. See, *e.g.*, *People v. Johnson*, 2013 IL App (1st) 111317, ¶ 38 (cross-examination is generally limited in scope to the subject matter inquired into or testified to during direct examination). Insofar as respondent may have wished to call any of the State's witnesses at the dispositional hearing to elicit any additional information, respondent's counsel never indicated such intention, which is why, as noted above, the trial court's decision not to hold a separate hearing does not warrant us to vacate its commitment order.

¶ 34    Lastly, we find respondent's argument that the trial court relieved the State of its burden of proof at the dispositional phase of the proceedings similarly unpersuasive. He maintains that once respondent was found to be a sexually violent person, the State bore the additional burden of proving that respondent should be committed to a secure facility rather than conditionally released. However, section 40(b)(2) of the Act, which governs commitment orders, provides:

> "In determining whether commitment shall be for institutional care in a secure facility or for conditional release, the court shall consider the nature and circumstances of the behavior that was the basis of the allegation in the petition under paragraph (b)(1) of Section 15, the person's mental history and present mental condition, where the person will live, how the person will support himself or herself, and what arrangements are available to ensure that the person has access to and will participate in necessary treatment." 725 ILCS 207/40(b)(2) (West 2006).

Thus, once a respondent has been found a sexually violent person, the State bears no burden of proof at the dispositional stage to show that respondent should be committed to secure care, rather than conditionally released. Respondent's reliance on section 60 of the Act is not persuasive because that section governs subsequent petitions for conditional release, and is not applicable to initial petitions for commitment. Furthermore, section 60 places the initial burden on respondent to show sufficient evidence of his progress in treatment, and only then shifts the burden to the State to prove that respondent has not made such progress. See 725 ILCS 207/60(d) (West 2006).

¶ 35                                          CONCLUSION
¶ 36    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 37    Affirmed.