2021 IL App (1st) 200426-U

No. 1-20-0426

Order filed December 23, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| JOEL F. HANDLER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16M1113383 |
| | ) | |
| DELORES AMMONS-LEWIS, | ) | Honorable |
| | ) | Michael F. Otto, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm the judgment of the circuit court where the court did not abuse its discretion in denying Ammons-Lewis' motion to strike Handler's appearance as his own counsel and in striking Ammons-Lewis' jury demand. We further find that the trial court did not abuse its discretion in determining the amount of the fees award, and its finding in favor of Handler on Ammons-Lewis' counterclaim was not against the manifest weight of the evidence.

¶ 2     This appeal arises following the trial court's award of attorney fees to plaintiff Joel

Handler based on his representation of defendant Delores Ammons-Lewis in an action against her

employer, the Metropolitan Water Reclamation District of Greater Chicago (MWRD). The trial

court also denied Ammons-Lewis' counterclaim against Handler, in which she alleged that he failed to pay her for paralegal and private investigatory services she provided on his behalf in a separate litigation. Ammons-Lewis also contended in her counterclaim that Handler agreed to forgive the amount she owed him in attorney fees in exchange for her not seeking compensation for her paralegal and private investigatory services.

¶ 3    On appeal, Ammons-Lewis contends that the trial court erred in denying her motion to strike Handler's appearance as his own counsel where Handler's representation of himself in a case where he was called as a witness violated the advocate-witness rule and Rule 3.7(a) of the Illinois Code of Professional Conduct of 2010 (Rules of Professional Conduct) (Ill. R. Prof'l Conduct (2010), R. 3.7(a) (eff. Jan. 1, 2010)). Ammons-Lewis also asserts that the court erred in striking her jury demand and in refusing to conduct a jury trial. Finally, Ammons-Lewis contends that the court erred in granting Handler the entirety of the attorney fees he sought in his complaint and in finding in favor of Handler on her counterclaim. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 4                                    I. BACKGROUND

¶ 5    In June 2016, Handler filed his complaint against Ammons-Lewis based on his representation of her in April and May 2010. In his complaint, Handler alleged that in April 2010, Ammons-Lewis retained him to represent her in an employment related matter against her employer, MWRD. In return for his legal services, Ammons-Lewis agreed to compensate Handler in the amount of $420 per hour and reimburse Handler for all costs incurred with his representation. Handler attached to his complaint a copy of his engagement agreement with Ammons-Lewis, which was signed by both him and Ammons-Lewis. Handler alleged that at the time he filed the complaint, Ammons-Lewis had an outstanding balance in the amount of $1,384.27. Handler

contended that Ammons-Lewis had refused his demands to pay the amount owed. Handler also attached to his complaint statements detailing his fees and expenses in connection with his representation of Ammons-Lewis. The statements reflected an outstanding balance of $1,384.27, which included two separate $500 payments by Ammons-Lewis, one in May 2010 and one in August 2011.

¶ 6    In August 2016, Ammons-Lewis filed a *pro se* appearance and counterclaim. In her counterclaim, Ammons-Lewis alleged that Handler owed her more than $10,000 for paralegal and private investigative services that she rendered for him from "2007 through February 2013" in connection with a federal case. Ammons-Lewis asserted that Handler had not paid her for these services. She asserted that she contacted Handler in October 2011 about her outstanding balance for his legal services. She alleged that Handler told that because he owed her for her paralegal services, that he would consider it a "wash."

¶ 7    Ammons-Lewis then retained an attorney who filed on her behalf an amended counterclaim for breach of contract and quantum meruit. In the amended counterclaim, Ammons-Lewis asserted that Handler represented Ammons-Lewis' sister, Tanya Ammons (Tanya), in a lawsuit against Tanya's employer from 2008 through January 2013.[1] In connection with that litigation, Ammons-Lewis worked at Handler's office providing paralegal and private investigative services. Ammons-Lewis asserted that Handler specifically requested her assistance, which included preparing documents and filings. Ammons-Lewis contended that at the time she performed these services, she was a certified paralegal.

---

[1]Tanya was also employed by MWRD.

¶ 8      Ammons-Lewis asserted that when she retained Handler to work on her own case, Handler indicated that he wanted Ammons-Lewis to pay for his services. Ammons-Lewis asked Handler whether she should have to pay for his services, considering the extensive work she had performed on Tanya's case at Handler's request. Handler told Ammons-Lewis that they should consider it a "wash," which Ammons-Lewis understood to mean that Handler would not charge Ammons-Lewis for his services, and, in exchange, he would not pay Ammons-Lewis for the paralegal services she provided on Tanya's case. In reliance on that agreement, Ammons-Lewis continued to provide paralegal services to Handler in connection with Tanya's litigation without compensation. Ammons-Lewis asserted that despite their agreement, Handler filed the instant action seeking legal fees. Ammons-Lewis therefore sought a judgment against Handler in an amount not to exceed $9,999.99, in exchange for the paralegal and private investigatory services she provided in connection with Tanya's litigation.

¶ 9      Ammons-Lewis subsequently filed a second amended counterclaim, adding a claim for fraud to her claims of breach of contract and quantum meruit. Ammons-Lewis also added allegations to the breach of contract count, alleging that Handler improperly withdrew from representing Tanya in January 2013. Ammons-Lewis asserted that she advanced sums of money to Handler for his services and expenses in representing Tanya in an amount of "at least $40,000.00." Ammons-Lewis therefore sought a judgment in her favor "in excess" of $50,000. Handler's refusal to return the advanced sums of money, and his withdrawal from Tanya's case in January 2013 also formed the basis of Ammons-Lewis' newly added count for fraud.

¶ 10      Because Ammons-Lewis' second amended counterclaim requested damages in excess of $50,000, Handler filed a motion to transfer the case from the Municipal Division to the Law

Division. The motion was granted and the case was transferred to a new trial court judge in the Law Division.

¶ 11    Handler filed a motion to dismiss the second amended counterclaim on the basis that Ammons-Lewis failed to state a cause of action, that the claims for fraud and breach of contract were barred by the statute of limitations, and that Ammons-Lewis could not maintain a cause of action for quantum meruit because she acknowledged that an express contract existed between the parties.

¶ 12    The court dismissed Ammons-Lewis' claims for breach of contract and quantum meruit without prejudice pursuant to sections 2-605 and 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-605, 5/2-615 (West 2016)). However, the court dismissed Ammons-Lewis' claim for fraud with prejudice pursuant to section 2-619 of the Code. 735 ILCS 5/2-619 (West 2016). The court permitted Ammons-Lewis to file a third amended counterclaim with regard to her claims for breach of contract and quantum meruit.

¶ 13    Ammons-Lewis filed a third amended counterclaim restating her claims for breach of contract and quantum meruit. In support of her breach of contract claim, Ammons-Lewis asserted that after Tanya retained Handler, Ammons-Lewis advanced money to Handler that he assured her would be repaid once the litigation was resolved. Handler also requested Ammons-Lewis' assistance on a variety of matters related to the litigation, including drafting, filing, and reviewing documents, conducting research, and attending depositions. Ammons-Lewis contended that Handler summarily withdrew from representing Tanya in January 2013, and never paid Ammons-Lewis for her paralegal services, or returned to her the money she had advanced to him at the beginning of his representation of Tanya. In January 2013, during a three-way telephone conversation with Handler, Ammons-Lewis, and Tanya, Handler told Ammons-Lewis that he

wanted to be paid for his services in representing her. Ammons-Lewis asked whether she should have to pay for those services, because Handler had not paid her for the services she performed for him. Handler then stated that in consideration of those services, Ammons-Lewis would not owe him anything for his representation. The next day, Ammons-Lewis and Handler had a second telephone conversation where they agreed to offset their claims against each other in a "wash" agreement.

¶ 14    Handler filed a motion to dismiss the third amended counterclaim based on sections 2-605, 2-606, 2-615, and 2-619 of the Code. 735 ILCS 5/2-605, 5/2-606, 5/2-615, 5/2-619 (West 2016) The court denied Handler's motion with respect to Ammons-Lewis' claim for breach of contract, but granted the motion with respect to the claim for quantum meruit. The court's written order indicates that after discussion with the court, Ammons-Lewis elected to voluntarily dismiss the quantum meruit count. Ammons-Lewis subsequently filed a corrected third amended counterclaim.

¶ 15    In September 2018, Ammons-Lewis filed a motion to strike Handler's appearance as his own counsel. In the motion, Ammons-Lewis asserted that Handler filed this case on his own behalf, and was likely to be one of the only witnesses called to testify at trial, along with Ammons-Lewis and Tanya. Ammons-Lewis contended that, as an attorney, Handler was prohibited from representing himself based on Rule 3.7(a) of the Rules of Professional Conduct. Ill. R. Prof'l Conduct (2010), R. 3.7(a) (eff. Jan. 1, 2010). Ammons-Lewis asserted that, in the alternative, Handler should be prohibited from offering his own testimony at trial. The court summarily denied the motion to strike.

¶ 16    In June 2019, Ammons-Lewis filed a motion to terminate her attorney's representation and find a new attorney or represent herself *pro se*. In July 2019, Ammons-Lewis filed her second *pro*

*se* appearance and, for the first time, a jury demand. Handler filed a motion to strike Ammons-Lewis' jury demand contending that Ammons-Lewis failed to properly file a demand with either her initial appearance or the appearance of her counsel. Handler also pointed out that Ammons-Lewis did not make a jury demand in conjunction with her counterclaim or any of the amendments thereto. Handler contended that Ammons-Lewis did not make this initial jury demand until after the case had been pending for more than three years. Handler maintained that the court should therefore strike Ammons-Lewis' untimely jury demand.

¶ 17   The court entered an order granting Handler's motion and striking Ammons-Lewis' jury demand. The order provided that, "[t]his case shall proceed to a bench trial."

¶ 18   At trial, Handler called himself as a witness, and testified in a narrative form. Handler testified that Ammons-Lewis retained him to represent her in April 2010 in connection with a dispute she had with her employer, MWRD. Handler was familiar with Ammons-Lewis because he had previously represented her sister, Tanya, in an action against MWRD. Handler and Ammons-Lewis entered into an engagement agreement whereby Ammons-Lewis agreed to pay him at a rate of $420 per hour, plus costs. Handler detailed the work he performed on Ammons-Lewis' behalf, which included drafting letters to an attorney for MWRD, and reviewing documents from both Ammons-Lewis and MWRD. Handler then detailed the invoices he sent to Ammons-Lewis based on the work he performed on her case.

¶ 19   Handler testified that in May 2010, Ammons-Lewis had an outstanding balance of $656.16. Ammons-Lewis came to Handler's office and paid him $500 in cash toward her bill. Ammons-Lewis then sent documents to Handler in connection with her case. Handler reviewed those documents and also had conversations with both Ammons-Lewis and an attorney for MWRD. Handler testified that at the end of May 2010, Ammons-Lewis had an outstanding balance of

$1,880.86, which included the $500 she had already paid him earlier that month. Handler did not render any further work for Ammons-Lewis after May 2010. Handler sent bills to Ammons-Lewis, but she did not pay them. The invoices and correspondences with Ammons-Lewis were entered into evidence as exhibits.

¶ 20     Handler continued to contact Ammons-Lewis about payment. In October 2010, Ammons-Lewis sent a letter to Handler indicating that she had been off of work, but had not forgotten about the work he had done. In August 2011, Ammons-Lewis sent Handler a check for $500. Handler continued to request that Ammons-Lewis send him the remaining amount owed on her bill. In June 2016, Handler initiated the instant action. Ammons-Lewis' outstanding bill at that time was $1,384.27. Handler denied that any "wash agreement" existed with regard to Ammons-Lewis' performance of paralegal duties at his office.

¶ 21     Ammons-Lewis testified that she met Handler in February 2008 while he was representing Tanya. In April 2010, she was having problems with her employer, MWRD, and asked him to write to her employer about the issues. Ammons-Lewis believed that MWRD was retaliating against her because she was working with Handler on Tanya's case against MWRD. Ammons-Lewis testified that while Handler was drafting those letters she was "working around the clock" at his office doing paralegal and private investigative work. Ammons-Lewis testified that she worked with Handler from February 2008 through January 2013 on Tanya's case. Ammons-Lewis testified that this was not volunteer work. Ammons-Lewis also testified that she advanced $70,000 to Handler in connection with Tanya's case.

¶ 22     In January 2013, Handler withdrew from Tanya's case. Ammons-Lewis testified that after he withdrew, he told Ammons-Lewis in regard to the money that she owed him for his services that they should "[c]onsider it a wash. I don't owe you and you don't owe me." Ammons-Lewis

acknowledged that she testified at her deposition that she never requested to be compensated for her work on Tanya's case. Ammons-Lewis also acknowledged that she never submitted a bill to Handler for her work, never discussed a rate of compensation for her work, and never requested the $70,000 she advanced to Handler be returned to her.

¶ 23    In finding in favor of Handler, the court stated that it had reviewed the testimony of the parties and the documents entered into evidence. The court found that there was "no question in the Court's mind that there was a retainer agreement, that bills were issued, and that they were not fully paid." The court stated that the question was whether the parties entered into a "wash agreement" as Ammons-Lewis asserted in her counterclaim. The court stated that it was Ammons-Lewis' burden to prove the allegations in her counterclaim. The court noted that Ammons-Lewis' evidence on the wash agreement was "conflicting" because she testified at trial that she entered into the wash agreement with Handler in January 2013, but she was impeached with her deposition testimony and her initial counterclaim, in which she alleged that they entered into the wash agreement in October 2011. The court noted that Ammons-Lewis did not offer any evidence to substantiate the existence of the wash agreement. The court observed that Handler denied the existence of the agreement, and there were no letters, telephone records, or other documentary evidence, from which the court could infer that such a conversation took place.

¶ 24    The court noted that it appeared from the evidence presented that Ammons-Lewis put in substantial time working on Tanya's case, but found that she was not really working for Handler. She was instead working on her sister's behalf in an effort to reduce her litigation costs by volunteering as a paralegal. The court observed that Ammons-Lewis never told Handler she expected to be paid for her services. The court therefore entered judgment in favor of Handler on

the complaint in the amount of $1,384.27, and entered judgment in favor of Handler on Ammons-Lewis' counterclaim.

¶ 25    Ammons-Lewis filed a *pro se* motion to reconsider, which the trial court summarily denied. This appeal follows.

¶ 26                                    II. ANALYSIS

¶ 27    On appeal, Ammons-Lewis, now represented by counsel, contends that the trial court erred in denying her motion to strike Handler's appearance as his own counsel under the advocate-witness prohibition and Rule 3.7 of the Rules of Professional Conduct. Ammons-Lewis also contends that the court erred in striking her jury demand and in failing to conduct a jury trial. Ammons-Lewis finally asserts that the court erred in finding in favor of Handler on her third amended counterclaim for breach of contract, and in awarding Handler the full amount of fees he sought in his complaint without inquiring into whether those fees were reasonable or whether the work performed was necessary.

¶ 28                            A. Advocate-Witness Rule

¶ 29    Ammons-Lewis first contends that the court erred in denying her motion to strike Handler's appearance as his own counsel under the advocate-witness rule and Rule 3.7 of the Rules of Professional Conduct. Ammons-Lewis contends that Handler represented himself at all times during the trial proceedings and knew that he would be a witness at trial. Ammons-Lewis asserts that Handler should have been required to retain outside counsel to represent him. Ammons-Lewis maintains that she was prejudiced by the court's ruling because Handler was permitted to give narrative testimony during which he directly engaged the trial court judge. Ammons-Lewis asserts that this allowed Handler to "coax[]" the trial court judge to the point that the trial court never even reached a determination of whether Handler's fees were reasonable or necessary.

¶ 30 "The advocate-witness rule precludes an attorney from acting as an advocate and as a fact witness in the same case." (Internal quotation marks omitted.) *Cushing v. Greyhound Lines, Inc.*, 2013 IL App (1st) 103197, ¶ 317 (quoting *Northern Moraine Wastewater Reclamation District v. Illinois Commerce Comm'n*, 392 Ill. App. 3d 542, 573 (2009)). "The rule reflects the inconsistency between the role of an advocate and that of a witness; the function of an advocate is to advance or argue the cause of another, while that of the witness is to state the facts objectively." *People v. Gully*, 243 Ill. App. 3d 853, 859 (1993). The rule, however, is not absolute and an attorney may testify as a fact witness in a case in which he is also an advocate if, in the trial court's discretion, that testimony is necessary. *Northern Moraine Wastewater Reclamation District*, 392 Ill. App. 3d at 573. The determination of whether counsel should be disqualified is within the sound discretion of the trial court and we will not disturb that decision on appeal absent an abuse of that discretion. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 176 (1997).

¶ 31 The advocate-witness rule is closely linked to Rule 3.7 of the Rules of Professional Conduct. See *People v. Rivera*, 2013 IL 112467, ¶¶ 39-40. Under that rule:

> "(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client."

Ill. R. Prof'l Conduct (2010), R. 3.7(a)(1)-(3) (eff. Jan. 1, 2010).

We observe, however, that although canons of ethics are designed to safely guide attorney conduct, they are not otherwise legally binding on this court. *Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.*, 218 Ill. App. 3d 383, 396 (1991).

¶ 32    This court has recognized that the disqualification of an attorney is a drastic measure, and should be granted only when absolutely necessary. *In re Marriage of Stephenson*, 2011 IL App (2d) 101214, ¶ 19. In order to prevent the party seeking disqualification from using the motion for disqualification as a tactical weapon to gain undue advantage in the litigation, this court has "determined that motions to disqualify should be made with reasonable promptness after a party discovers the facts which [led] to the motion." (Internal quotation marks omitted.) *In re Estate of Klehm*, 363 Ill. App. 3d 373, 377 (2006) (quoting *Kafka v. Truck Insurance Exchange*, 19 F. 3d 383, 386 (7th Cir. 1994)). Thus, waiver is a valid basis for denying a motion to disqualify. *Id.*

> "In determining whether a moving party has waived its right to object to an attorney's representation of an adverse party on conflict of interest grounds in civil cases, courts have considered such factors as the length of the delay in bringing the motion to disqualify; when the movant learned of the conflict; whether the movant was represented by counsel during the delay; why the delay occurred; and whether disqualification would result in prejudice to the nonmoving party." *Id.*

¶ 33    In this case, Handler filed his complaint on June 1, 2016. Handler was at all times representing himself in the litigation. Although Ammons-Lewis initially appeared *pro se*, an attorney filed an appearance on her behalf on September 9, 2016. Despite the fact that Handler continued to represent himself in the proceedings, and his intention to testify at trial was apparent throughout the proceedings, Ammons-Lewis did not file a motion to strike Handler's appearance as his own counsel until September 20, 2018. This two-year delay where Ammons-Lewis was

aware that Handler intended to both represent himself in the litigation and testify at trial, while she was represented by counsel, without explanation for the delay, provided a sufficient basis for the trial court deny the motion solely on the basis of waiver. This court has held that delays of 15 months and 2 years after the party discovered the alleged conflict were sufficiently long periods of time to find waiver of a motion to disqualify. See *Tanner v. Board of Trustees of University of Illinois*, 121 Ill. App. 3d 139, 146-47 (1984); *Roth v. Roth*, 84 Ill. App. 3d 240, 245 (1980).

¶ 34     Even if we found no waiver, we would nonetheless find no error by the trial court because Ammons-Lewis has failed to show that she suffered any prejudice as a result of Handler's self-representation. The issues at trial were simple. Handler provided legal services to Ammons-Lewis pursuant to an engagement agreement signed by both parties. Handler billed Ammons-Lewis for those services. Ammons-Lewis failed to pay those amounts in full. Handler proved the amount due by producing the engagement agreement, the bills, and correspondences to and from Ammons-Lewis showing the amounts she paid and the amounts she still owed. Ammons-Lewis did not dispute the existence of the agreement, the amount billed, or her failure to pay the entire amount billed. Thus, Handler's testimony was almost ancillary to the trial court's ruling on Handler's complaint. The issue was essentially uncontested, and thus Handler was permitted to act as both an advocate and a witness pursuant to Rule 3.7(a)(1). Ill. R. Prof'l Conduct (2010), R. 3.7(a)(1) (eff. Jan. 1, 2010).

¶ 35     The only issue that was contested was the existence of the "wash agreement." Again, however, Handler's testimony on this issue was almost superfluous to the trial court's ruling. In ruling in Handler's favor on Ammons-Lewis' counterclaim, the court noted that it was Ammons-Lewis' burden to prove the allegations in her counterclaim, and she failed to do so where she failed to present any evidence that a wash agreement existed other than her own testimony, which the

court found conflicted with the allegations in her counterclaim and her deposition testimony. The court noted that Ammons-Lewis did not offer any evidence to substantiate the existence of the wash agreement, such as letters or telephone records.

¶ 36     Similarly, with Ammons-Lewis' contention that Handler owed her compensation for the paralegal services she provided for Tanya's case, it was uncontested that Ammons-Lewis performed that work. It was similarly uncontested that Ammons-Lewis never requested to be paid for these services, never submitted a bill to Handler, and never even discussed compensation with him. Ammons-Lewis' provision of paralegal services appeared to serve only to substantiate her claim regarding the wash agreement, rather than to represent services for which she desired compensation. Nonetheless, Ammons-Lewis did not present any evidence regarding the work she performed or the reasonable value of the services. Handler simply testified that he never agreed to pay Ammons-Lewis for her services, a point that Ammons-Lewis conceded, noting that she never requested to be compensated.

¶ 37     Ammons-Lewis asserts, however, that she was prejudiced by Handler's self-representation because he was permitted to testify in a narrative fashion during his case-in-chief. Ammons-Lewis asserts that during his testimony, Handler directly engaged the trial court judge, "seemingly attempting to secure the Court's passive assent or acquiescence in Handler's own testimony." Ammons-Lewis contends that this compromised the circuit court judge's ability to assess Handler's demeanor while testifying and that he was "so effective" that it induced the trial court judge into neglecting to evaluate certain aspects of the case, such as whether the legal services Handler provided were reasonable or necessary.

¶ 38     Ammons-Lewis' contentions in this regard seem to border on an allegation that Handler was able to bias the trial court judge against her. The contentions stop short of such an allegation,

however, raising some sort of nebulous claim that Handler was able to convince the trial court judge to rule in his favor merely through his narrative testimony. There is simply no basis for such a contention anywhere in the record. The trial court's ruling shows that it was based on the documentary evidence, which detailed the work performed, the amounts owed, and Ammons-Lewis' failure to pay, as well as the lack of substantive evidence presented by Ammons-Lewis on her counterclaim. Moreover, the record demonstrates that because both parties represented themselves and were the only two witnesses, the court conducted a somewhat relaxed trial. The court permitted both witnesses to testify in a narrative fashion and the court even helped Ammons-Lewis frame her questions to Handler on direct and cross-examination so that they would survive objections. Far from suggesting any bias or improper procedure, the trial record reflects the trial court's intention to properly and expeditiously uncover all of the facts giving rise to both the complaint and the counterclaim. Any contention that Handler was able to improperly influence the trial court's judgment in this case is simply not supported by the record.

¶ 39    Finally, we observe that this court has reversed a trial court's grant of a motion to disqualify where a law firm was representing itself in a case against a former client for the collection of fees. *Pedersen & Houpt, P.C. v. Summit Real Estate Group, LLC*, 376 Ill. App. 3d 681 (2007). The dispute in that case concerned a previous version of Rule 1.6 of the Rules of Professional Conduct, but the law firm on appeal also contended that it had a right to proceed as its own counsel under a previous, but similar, version of Rule 3.7(a). *Id.* at 685-86. This court found that the trial court abused its discretion in granting the defendants' motion to disqualify the attorneys from representing themselves in the fee recovery action because such conduct was "explicitly authorized under the rules of legal ethics." *Id.* at 688. We find that the same result is warranted here, and we

hold that the trial court did not err in denying Ammons-Lewis' motion to strike Handler's appearance as his own counsel.

¶ 40                                    B. Jury Demand

¶ 41    Ammons-Lewis next contends that the court erred in striking her jury demand and proceeding to a bench trial. Ammons-Lewis asserts that the court improperly struck her jury demand, despite the fact that she filed the jury demand with leave of court. Ammons-Lewis further asserts that the court set the case for a jury trial on October 17, 2019, but then did not call a venire or empanel a jury, and proceeded to a bench trial. Ammons-Lewis further contends that Handler did not file a timely motion to strike her jury demand where he filed his motion 61 days after she filed her demand.

¶ 42    We first must correct several misstatements of fact that Ammons-Lewis makes in support of this contention. First, Ammons-Lewis asserts that the trial court granted her leave of court to file a jury demand on July 26, 2019. However, the order of July 26, 2019, reflects no such leave of court. That order merely granted Ammons-Lewis' attorney's motion to withdraw and granted her a period of time to retain new counsel or file a *pro se* appearance. In her brief, Ammons-Lewis acknowledges that the July 26 order does not "explicitly reflect" leave to file a jury demand, but states that Handler prepared the order for the trial court judge's signature. It is unclear if Ammons-Lewis is suggesting some sort of subterfuge by Handler in drafting the order, purposefully leaving out of the order the leave of court to file a jury demand. Nonetheless, no such leave of court appears anywhere in the record.

¶ 43    Next, Ammons-Lewis contends that on October 17, 2019, the trial court entered an order setting the case for a jury trial on December 12 and 13, 2019. Ammons-Lewis notes that order was also prepared for the trial court judge's signature by Handler. However, a review of that order

shows that the October 17 order set the case for a "*non-jury trial*" on December 12 and 13. (Emphasis added.)

¶ 44 The facts clarified, a brief chronology of the proceedings shows that the trial court did not abuse its discretion in striking Ammons-Lewis' jury demand. See *In re Estate of Burren*, 2013 IL App (1st) 120996, ¶ 29. First, we observe that section 2-1105 of the Code provides that: "A defendant desirous of a trial by jury must file a demand therefor not later than the filing of his or her answer. Otherwise, the party waives a jury." 735 ILCS 5/2-1105(a) (West 2016). Here, Handler filed his complaint in June 2016. Ammons-Lewis filed her *pro se* appearance and counterclaim in August 2016. At that time, she did not file a jury demand or otherwise request a trial by jury. An attorney made an appearance on Ammons-Lewis' behalf in September 2016, and similarly did not file a jury demand. Ammons-Lewis filed an amended or corrected counterclaim on four separate occasions: in September 2016, December 2016, September 2017, and April 2018. At no point did she file a jury demand. Finally, in June 2018, Ammons-Lewis filed an answer to Handler's complaint. She did not file a jury demand along with her answer.

¶ 45 Ammons-Lewis did not file a jury demand until July 2019 when she filed her second *pro se* appearance after her counsel withdrew. This demand thus came more than three years after Handler filed his complaint, nearly three years after Ammons-Lewis filed her initial appearance, and more than a year after she filed her answer. In the intervening years, Ammons-Lewis had numerous opportunities to file a jury demand, but did not exercise them.

¶ 46 Nonetheless, the court could have granted Ammons-Lewis' late jury demand, pursuant to Supreme Court Rule 183 (eff. Feb. 16, 2011), if she had established good cause for the delay. *Paul H. Schwendener, Inc. v. Larrabee Commons Partners*, 338 Ill. App. 3d 19, 28-29 (2003); *Hernandez v. Power Construction Co.*, 73 Ill. 2d 90, 95 (1978). Here, Ammons-Lewis did not

offer any cause for her delay, and does not suggest that such good cause exists. Accordingly, we cannot say that the trial court abused its discretion when it struck Ammons-Lewis' late jury demand. See *People v. Miller*, 2014 IL App (1st) 122186, ¶ 24; *Kren v. Payne*, 81 Ill. App. 3d 283, 286 (1980).

¶ 47                                    C. Counterclaim

¶ 48    Ammons-Lewis next contends that the trial court erred in finding in favor of Handler on her counterclaim for breach of contract. Ammons-Lewis asserts that the evidence presented demonstrated that she provided extensive assistance to Handler in preparing and filing documents for Tanya's litigation. Ammons-Lewis maintains that although they did not discuss her compensation, their agreement had all of the hallmarks of a contract.

¶ 49    We review the trial court's ruling from a bench trial under the manifest weight of the evidence standard. *Dargis v. Paradise Park, Inc.*, 354 Ill. App. 3d 171, 177 (2004). This standard recognizes that the trial judge, as a trier of fact, is in a superior position to observe witnesses, judge their credibility, and determine the weight their testimony should receive. *Bazydlo v. Volant*, 164 Ill. 2d 207, 214-15 (1995). We will find that a judgment is against the manifest weight of the evidence "only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154 (2001).

¶ 50    Here, the trial court found that Ammons-Lewis put in substantial time working on Tanya's case. However, the court determined that such work was not truly done as assistance to Handler, but was instead done for the benefit of her sister. The court reasoned that Ammons-Lewis was attempting to help Tanya lower the costs of the litigation by volunteering her time. The court noted that Ammons-Lewis never explicitly told Handler that she wanted to be paid.

¶ 51    We cannot say that the trial court's ruling was against the manifest weight of the evidence. At trial, Ammons-Lewis herself acknowledged that she never entered into an agreement with Handler setting forth the amount she was to be compensated, and she never requested to be paid for her services. Ammons-Lewis did not even establish what tasks, precisely, she undertook on Handler's behalf, aside from vague allegations about preparing and filing documents and attending depositions in Tanya's litigation. Handler testified that he never agreed to pay Ammons-Lewis for the work she performed on Tanya's case.

¶ 52    Ammons-Lewis also failed to present any evidence of a "wash agreement" aside from her own, conflicting testimony about that agreement. As the trial court recognized, throughout the proceedings Ammons-Lewis provided several different dates for when that agreement apparently took place. Ammons-Lewis also failed to provide any corroborating evidence to establish that such an agreement existed. Notably, Ammons-Lewis represented that Tanya was part of a three-way telephone conversation in January 2013 where Ammons-Lewis and Handler discussed the agreement, but she did not call Tanya as a witness to corroborate the existence of the agreement. Nor did she produce telephone records to show that such a phone call even occurred. Handler, for his part, unequivocally denied the existence of any wash agreement. Thus, based on the evidence presented, we cannot say that the trail court's ruling on the Ammons-Lewis' counterclaim was unreasonable, arbitrary, or not based on evidence, or that the opposite conclusion is clearly evident. *Best v. Best*, 223 Ill. 2d 342, 350 (2006).

¶ 53                              D. Fee Award

¶ 54    Finally, Ammons-Lewis contends that the court erred in awarding Handler the entire amount of fees and costs he claimed in his complaint. Ammons-Lewis asserts that the court summarily awarded Handler the entire amount of the fees he requested without inquiring into

whether the fees were reasonable or whether the work done was necessary. The determination of what constitutes reasonable compensation is a matter within the discretion of the trial court, and we will not disturb the trial court's determination on review absent an abuse of that discretion. *Chicago Title & Trust Co. v. Chicago Title & Trust Co.*, 248 Ill. App. 3d 1065, 1072 (1993).

¶ 55    We find no error in the trial court's award of fees. "A properly supported fee petition must specify the services performed, by whom, the time expended and the rate charged." *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 102.

> "In assessing the reasonableness of fees, the trial court should consider a variety of factors, including the skill and standing of the attorneys employed, the nature of the case, the novelty and difficulty of the issues involved, the degree of responsibility required, the usual and customary charge for the same or similar services in the community, and whether there is a reasonable connection between the fees charged and the litigation." *Chicago Title & Trust Co.*, 248 Ill. App. 3d at 1072.

The determination as to what constitutes reasonable compensation is a matter peculiarly within the discretion of the trial court. *Id.*

¶ 56    Here, Handler attached to his complaint the engagement agreement with Ammons-Lewis demonstrating the $420 hourly rate. Handler also attached invoices, which showed the work performed, the time expended, and the date. The invoices also documented Handler's expenses, including postage and photocopying charges. These contemporaneous time records describing the services rendered and showing the computations upon which the complaint was predicated are "[o]ne of the most critical components of a fee petition" because they permit the trial court to determine whether the claimed time spent is reasonable. *Young*, 2015 IL App (1st) 131887, ¶ 103. Handler also testified regarding the work he performed, which involved drafting letters to an

attorney for MWRD, and reviewing documents from both Ammons-Lewis and MWRD. At no point did Ammons-Lewis contend that the $420 hourly rate specified in the engagement agreement was unreasonable. She likewise did not assert that the total amount of the fees Handler sought were unreasonable, or that the work he performed was unnecessary. The court stated that it reviewed the parties' testimony and the documents entered into evidence and found that was no question that there was a retainer agreement and that Ammons-Lewis failed to fully pay the bills that were issued. The court ultimately determined that the full amount of the fees Handler requested was reasonable. In reaching that determination, a trial court is permitted to rely on its own knowledge and experience and assess the time required to complete particular activities. C*hicago Title & Trust Co.*, 248 Ill. App. 3d at 1074. Accordingly, we find no reason in the record to disturb the trial court's determination of fees and costs. *Brandenberry Park Condominium Association v. Abu Taleb*, 2020 IL App (1st) 200442, ¶ 24.

¶ 57                                                  III. CONCLUSION

¶ 58    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 59    Affirmed.